# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LENORA RICE, on behalf of herself and other persons similarly situated, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| NATIONAL BEVERAGE CORP. d/b/a LaCROIX SPARKLING WATERS, | ) ) ) |
| Defendants. | ) ) |

Case No. 18 CV 7151

Honorable Joan B. Gottschall

## MEMORANDUM OPINION AND ORDER

Defendant National Beverage Corp., doing business as LaCroix Sparkling Waters ("defendant"), asks the court to sanction plaintiff Lenora Rice ("Rice") and her counsel under Federal Rule of Civil Procedure ("Rule") 11 for plaintiff's "frivolous lawsuit," ECF No. 33 at 1, claiming that LaCroix Sparkling Water contains synthetic rather than natural ingredients. Defendant also accuses plaintiff of a "public smear campaign" that defendant claims is "malicious" and equivalent to "financial terrorism." *Id.* at 2, 3.

Defendant makes a sympathetic case. It views itself as having revolutionized the soft drink industry to make it better and healthier for consumers by manufacturing a sparkling water that is "great-tasting [and] healthy" with all its ingredients derived from natural sources. Mot. Sanctions 1-2. It has been the victim, it claims, of an entirely frivolous lawsuit, accompanied by a press release filled with "incendiary language," causing damage which has robbed shareholders "of market value [of] over a billion dollars. . . ." *Id.* at 3. It looks to the court, via the vehicle of Rule 11, to step in and halt the disintegration of values the plaintiff's complaint and conduct represent. *Id.*

Defendant relies, however, on argument and not evidence, and while it may well be successful in proving what it argues on the basis of evidence, its outraged, repetitive brief, characterized by *ipse dixit* assertions, provides the court with little basis for ruling in its favor. As a result, the motion for sanctions is denied.

## I. Background

This case began in the Circuit Court of Cook County, Illinois, where plaintiff filed his complaint seeking class action status on October 1, 2018, ECF No. 1-1, Ex. A. Plaintiff brought state law claims for breach of warranty, unjust enrichment, and violating the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. § 515/1 et seq. The complaint summarized the case as a challenge to defendant's "practice of mislabeling their signature product, LaCroix Water, as 'all-natural.' LaCroix Water is manufactured using non-natural flavorings and synthetic compounds, and Defendant continues to mislead consumers into believing that their product is natural when it is not." Compl. 1. Under the heading "Factual Allegations," plaintiff alleged that:

> 18. In fact, LaCroix [sparkling water] contains, among other things: ethyl butanoate, limonene, linalool and linalool propionate.
>
> 19. The above chemical compounds are synthetically created and added to consumable goods to make those goods taste or smell a certain way. For instance, limonene causes kidney toxicity and tumors; linalool is used as a cockroach insecticide; and linalool propionate is used to treat cancer.
>
> 20. The Food and Drug Administration has declared these synthetic compounds to be "synthetic."
>
> 21. Defendant is well-aware that LaCroix water contains these non-natural ingredients.

Compl. 4.

Defendant tells the court that plaintiff issued a "companion" press release (a copy is not in the record) on an unspecified date. Mot. Sanctions 2. The press release's allegations received a great deal of media coverage and, according to defendant, damaged its brand and inflicted "catastrophic harm" including "billions of losses" to defendant's investors. *Id.* at 3.

Defendant removed the case to federal court on October 25, 2018, under provisions of the Class Action Fairness Act of 2005. *See* Notice Removal ¶¶ 6–24, ECF No. 1; 28 U.S.C. § 1332(d), § 1453. Instead of seeking sanctions immediately, defendant answered the complaint on November 14, 2018, ECF No. 18.

The parties then began formulating a discovery plan. *See* Fed. R. Civ. P. 26(f). Plaintiff's counsel sent a letter dated November 26, 2018, making plaintiff's initial disclosures and proposing a discovery plan. *See* ECF No. 33-1, Ex. A. Plaintiff disclosed the results of a pre-suit laboratory test of a single vile of La Croix sparkling water. ECF No. 33-2, Ex. B. The test did not detect "[g]lycerin, propylene glycol, ascorbic acid and erythritol." *Id.* at 2. But the report states that "compounds observed . . . included ethyl butanoate, limonene, linalool and linalool propionate." *Id.* A disclaimer at the bottom of the report states that "[t]his analysis is provided in good faith with no warranty expressed or implied. [The tester] assumes no obligation or liability with respect to the use of the results." *Id.*

Lawyers for both sides conferred by phone on November 30, 2018, to discuss the discovery plan. Mot. Sanctions 12. The parties reported at an initial status conference in December 2018 that they were at issue, and discovery had begun. ECF No. 21 (Dec. 14, 2018). Defendant filed its motion for sanctions two months later.[1] ECF No. 33 (Feb. 14, 2019). In

---

[1] Plaintiff obtained leave to file a surreply on April 15, 2019. ECF No. 47.

March 2019, the court referred the case to Judge Rowland for discovery supervision. ECF No. 38 (March 18, 2019). Judge Rowland has ruled on several discovery matters, and the parties are briefing additional issues. *See* ECF Nos. 42, 48, 50, 58.

## II. Rule 11 Does Not Apply to Pre-Removal Action Taken in State Court

As already mentioned, defendant seeks Rule 11 sanctions.[2] Initially, the court is concerned that defendant points to no federal conduct to which Rule 11 applies.

"[T]he central purpose of Rule 11 is to deter baseless filings in [federal] district court and thus . . . streamline the administration and procedure of the federal courts." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 552 (1991) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 392 (1990)). Under Rule 11(b), a lawyer or party certifies four things by presenting a pleading, like a complaint, to a federal district court—"whether by signing, filing, submitting, or later advocating it. . . ." Fed. R. Civ. P. 11(b). Among other things, the signer certifies that the paper "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;" that the legal claims "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law;" and that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation." Fed. R. Civ. P. 11(b)(1)–(3).

Defendant incorrectly asserts that Rule 11 obligated plaintiff to dismiss the complaint immediately upon the case's removal to federal court. Mot. Sanctions 14. Rule 11 does not

---

[2] Defendant asserts in a footnote that Illinois Supreme Court Rule 137 is similar to Rule 11. Mot. Sanctions 12 n.4. If defendant means to suggest that this court should sanction plaintiff under Rule 137, defendant cites no federal case to support its argument and does not otherwise develop its argument. *See id.* Defendant has therefore waived any argument under Illinois Supreme Court Rule 137.

authorize a federal court to sanction a party for signing and filing a complaint in state court prior to removal. *Burda v. M. Ecker Co.*, 954 F.2d 434, 440 (7th Cir. 1992) (citing *Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120 (1989)); *Schoenberger v. Oselka*, 909 F.2d 1086, 1087 (7th Cir. 1990). Rule 11 also does not require a plaintiff to update or amend a state court complaint after removal. *Bisciglia v. Kenosha Unified Sch. Dist. No.1*, 45 F.3d 223, 226 (7th Cir. 1995); *see also* Fed. R. Civ. P. 81(c)(2).

Defendant cites two Rule 11 cases removed from state court. Mot. Sanctions 14–15. Each case expressly distinguishes between the unsanctionable pre-removal filing of a complaint and potentially sanctionable post-removal activity. Opposing a motion to dismiss the complaint is the activity to which Rule 11 applied in each case. *See McConnell v. Iovino Boersma Enters., Inc.*, 2005 WL 1520806, at *3 (N.D. Ill. June 23, 2005); *Tannenbaum v. Baxter Healthcare Corp.*, 1996 WL 327994, at *5, *7–8 (N.D. Ill. June 12, 1996) (Gottschall, J.).

Rule 11 of course applies with full force to post-removal activity. Fed. R. Civ. P. 81(c). So presenting a paper advocating the complaint's merits—by, for example, opposing a motion to dismiss—brings Rule 11 to bear. *Bisciglia*, 45 F.3d at 227; *Maciosek v. Blue Cross & Blue Shield United of Wis.*, 930 F.2d 536, 541–42 (7th Cir.1991).

Applying these principles here, defendant points to no post-removal activity to which Rule 11 applies. After removal defendant answered the state court complaint rather than moving to dismiss it, ECF No. 18, plaintiff cannot, therefore, be sanctioned for advocating the complaint's sufficiency in a response to a motion to dismiss. Defendant repeatedly argues that "at the time of the filing of the [c]omplaint" plaintiff lacked a good faith basis for certain statements in the complaint and the companion press release. Mot. Sanctions 16, 17. But "federal courts may not properly sanction the signer under Rule 11 for conduct occurring solely

5

in state courts or administrative tribunals." *Bisciglia*, 45 F.3d at 227 (quoting *Dahnke v. Teamsters Local 695*, 906 F.2d 1192, 1199 (7th Cir. 1990)).

Nor does Rule 11 reach the other activity discussed by defendant in its briefing: (1) statements in plaintiff's initial disclosures, *see* Fed. R. Civ. P. 26(a)(1); (2) statements made during the November 30, 2018, phone call to make a discovery plan; (3) plaintiff's failure to withdraw the complaint after defendant provided, during discovery, a report defendant claims conclusively refutes plaintiff's allegations; and (4) plaintiff's opposition to the motion for sanctions. *See* Mot. Sanctions 15–16, 18–19; Reply 1, 2. The exclusion in Rule 11(d) covers items (1)–(3), which are discovery communications. *See* Fed. R. Civ. P. 11(d) (Rule 11 "does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37"). The Seventh Circuit held in *Bisciglia*, *supra*, 45 F.3d at 227, that a Rule 11 motion cannot be used as a bootstrap. Stated differently, opposing a Rule 11 motion does not bring unsanctionable state court conduct within Rule 11's scope. *Id.* Plaintiff, however, does not question Rule 11's applicability here. This court therefore declines to decide defendant's sanctions motion on these grounds alone.

### III. Rule 11 Analysis

Defendant argues generally that the complaint fails to "set forth any basis for its primary and central claim that the four compounds identified therein are synthetic." Mot. Sanctions 10. But the complaint need not do so. The issue before the court is whether plaintiff conducted a sufficient pre-suit inquiry and whether the complaint was filed for an improper purpose. "Whether counsel did an appropriate amount of pre-filing investigation, and whether a legal position is far *enough* off the mark to be 'frivolous'" are "fact-bound" and "fact-intensive" questions. *Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928, 931–34 (7th Cir. 1989) (en banc)

(emphasis in original). The court must determine whether the lawyer's pre-filing inquiry was objectively reasonable under the circumstances. *Kennedy v. Schneider Elec.*, 893 F.3d 414, 421 (7th Cir. 2018) (citing *U.S. Bank Nat'l Ass'n, N.D. v. Sullivan-Moore*, 406 F.3d 465, 470 (7th Cir. 2005)). Whether a party acted for an improper purpose is also determined objectively. *Pac. Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 118 (7th Cir. 1994) (citations omitted). The Seventh Circuit has identified several factors to consider when assessing the reasonableness of a pre-filing inquiry:

> [W]hether the signer of the documents had sufficient time for investigation; the extent to which the attorney had to rely on his or her client for the factual foundation underlying the pleading, motion or other paper; whether the case was accepted from another attorney; the complexity of the facts and the attorney's ability to do a sufficient pre-filing investigation; and whether discovery would have been beneficial to the development of the underlying facts.

*Divane v. Krull Elec. Co., Inc.*, 200 F.3d 1020, 1028 (7th Cir. 1999) (quoting *Brown v. Fed. of State Med. Bds. of the United States*, 830 F.2d 1429, 1435 (7th Cir. 1987)).

The parties disagree about how to allocate the burdens of proof.[3] Some district courts in the Seventh Circuit have held that the party seeking sanctions has the burden of proof and persuasion; the moving party "must satisfy the 'high burden of showing that Rule 11 sanctions are warranted.'" *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 860 (N.D. Ill. 2015) (quoting *Lundeen v. Minemyer*, 2010 WL 5418896, at *3 (N.D. Ill. Dec. 17, 2010)). Other district court cases in this circuit use a burden-shifting framework, requiring a prima facie showing of sanctionable conduct to shift the burden to the sanction opponent.[4] *See, e.g.,*

---

[3] There is no dispute that defendant complied with Rule 11(c)(2)'s "safe harbor" process. *See Matrix IV, Inc. v. Am. Nat'l Bank & Tr. Co. of Chicago*, 649 F.3d 539, 552 (7th Cir. 2011). After serving a Rule 11 motion, the moving party must wait 21 days to file the motion or present it to the court. Fed. R. Civ. P. 11(c)(2). During the 21-day safe harbor period, the paper may be withdrawn or corrected. *Matrix IV*, 649 F.3d at 552.

[4] The *Shrock* opinion cited in *Vandeventer* does not mention burden shifting. It instead turns on fair notice to the party opposing sanctions. The sanction opponent in *Shrock* lost because he did not counter allegations made in a motion for attorney's fees. *Shrock*, 810 F.2d at 662. The Seventh Circuit remanded the case to permit the party opposing sanctions an opportunity to

7

*Vandeventer v. Wabash Nat'l Corp.*, 893 F. Supp. 827, 840 (N.D. Ind. 1995) (citing *Shrock v. Altru Nurses Registry*, 810 F.2d 658 (7th Cir. 1987)) (other citation omitted).

The parties cite no Seventh Circuit case adopting a burden-shifting framework, and this court sees no need to resolve this issue today, particularly as the parties have not thoroughly briefed this rather complex issue. Regardless who must establish that sanctionable conduct occurred, this court finds that Rule 11 sanctions are unwarranted, primarily because defendant has "failed to substantiate" the key factual and legal claims made in its Rule 11 motion. *Fiala v. B & B Enters.*, 738 F.3d 847, 853–54 (7th Cir. 2013) (Rule 11 motion); *see also Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived. . . .") (quoting *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)) (alterations omitted). Defendant's arguments are grouped as follows: legal and factual contentions about what makes a substance "natural;" attacks on the adequacy of plaintiff's pre-suit testing; and the allegedly nefarious purpose revealed by the press release sent by plaintiff's attorneys.

### A. "Natural" And "Synthetic" Substances

There are numerous arrows in defendant's quiver, but perhaps the most important one is its claim, argued first and repeatedly, that plaintiff bases its suit on "an incorrect, nonsensical interpretation" of an FDA regulation, 21 CFR §182.60, an "interpretation of the law . . . so misguided and so unreasonable that it can only be the product of bad faith." Mot. Sanctions 2, 4.

The court, however, sees nothing obviously misguided and unreasonable about plaintiff's view of what the regulation asserts, that two substances used in defendant's sparkling water,

---

respond because the fee motion did not mention Rule 11, and the omission "may have lulled [the opponent] into thinking that he could meet the motion simply by making clear that the complaint was not utterly groundless, rather than by showing in addition that he had made an adequate investigation of the facts before filing the complaint." *Id.*

limonene and linalool, are synthetic. Plaintiff alleges that defendant's sparkling water contains four synthetic substances: "ethyl butanoate, limonene, linalool and linalool propionate." Compl. ¶ 18. Two of those substances, limonene and linalool, are listed in Title 21 CFR §182.60, under the following heading:

> Synthetic flavoring substances and adjuvants that are generally recognized as safe for their intended use . . . are as follows:
>
> . . . .
>
> Limonene (d-, l- and dl-).
>
> Linalool (linalol, 3,7—dimethyl—1,6—octadien—3—ol)

21 CFR §182.60.

Disregarding the various listed forms of these substances (which defendant has not attempted to explain to the court), the court sees nothing obviously misguided and unreasonable about plaintiff's view that the regulation indicates that limonene and linalool are synthetic. Defendant argues that the regulation refers only to the synthetic versions of these substances and not to their natural counterparts. *See* Mot. Sanctions 20–21. But how is the court to know, at this early stage of the litigation, that there *are* natural counterparts? Or that the limonene and linalool found in defendant's water are invariably in a natural form? Before examining whether plaintiff's counsel should have known that the regulation means what defendant says it means, defendant should give the court some basis for believing that plaintiff's interpretation is unreasonable. Just saying so, even if repeatedly, does not do so.

Defendant points out that the FDA list does not include the two other substances identified in defendant's product, linalool propionate and ethyl butanoate. Defendant has not provided the court with evidence as to the nature of these substances, apparently assuming that

9

the court will conduct its own internet analysis. It has done so, but it will not decide this motion based on such an off-the-record private search. In any event, this is what Wikipedia says about ethyl butanoate: "Ethyl butyrate, also known as ethyl butanoate, or butyric ether, is an ester with the chemical formula $CH_3CH_2CH_2COOCH_2CH_3$. It is soluble in propylene glycol, paraffin oil, and kerosene. It has a fruity odor, similar to pineapple and is a key ingredient used as a flavor enhancer in processed orange juices."[5] Not being a biologist and having no expert assistance, the court has no idea what this means as to the question of whether ethyl butyrate is natural or synthetic. The court has found nothing comparable describing linalool propionate, nor has defendant explained what it is.

Moreover, defendant wants the court to accept its contention that just because an ingredient is derived from a plant source (as opposed to a petrochemical source), it is natural. Plaintiff argues, citing 7 CFR § 205.2, that a synthetic substance as opposed to a natural one is made by a chemical process, as opposed to "naturally occurring biological processes," and provides (without citation) a Department of Agriculture Food Safety and Inspection Service definition of "a 'natural' product" as one that does not contain any artificial or synthetic ingredient, and does not contain any ingredient that is more than "'minimally processed.'" Resp. 4. ECF No. 36. Plaintiff has cited cases adopting its argument that the degree of processing and not plant derivation is what distinguishes a synthetic from a natural substance. *See, e.g.*, *Rojas v. Gen. Mills, Inc.*, 2014 WL 1248017, at *1 (N.D. Cal. March 26, 2014). This seems to be a real dispute, and the parties have not provided the court with any adequate basis for resolving it, neither with respect to how the four ingredients listed in the complaint are derived and/or processed nor with respect to which regulations apply to this dispute.

---

[5] https://en.wikipedia.org/wiki/Ethyl_butyrate

10

At this point, the court is in no position even to agree that an ingredient entirely derived from plants is of necessity "all natural." Plaintiff argues that the type and degree of processing required must also be considered. This position is not manifestly unreasonable.

Defendant next argues, again without any caselaw or expert opinion, that the relevant regulation is 21 CFR § 501.22, which defines "natural flavor" and "natural flavorings" as essential oils derived from plant material. Mot. Sanctions 9. That may well be the case, but defendant's Rule 11 motion does not provide the court with an adequate basis for concluding, as it would have to do to find on this issue for defendant, that the substances identified in defendant's water are essential oils derived from plant material. The court has no basis for so concluding.

Defendant also argues, this time with citations, that the FDA "has not engaged in rulemaking to establish a formal definition for the term 'natural.'" Mot. Sanctions 6. According to defendant, the FDA has "a longstanding policy concerning the use of 'natural' in food labeling," and interprets the term as meaning that "nothing artificial or synthetic has been included in or has been added to a food." *Id.* Defendant argues, and the court accepts, that the FDA has not specifically ruled that the substances plaintiff has identified in defendant's product are "synthetic." *Id.* But who does this help? It means that plaintiff cannot rely on any specific finding by the FDA but neither can defendant. Nor can the court. Is defendant arguing that if LaCroix Water contained synthetic ingredients, there would be an FDA rule declaring those substances synthetic? Of this, the court has no idea, and the defendant has not so stated.

Finally, since the resolution of this motion depends to a great extent on defendant's failure to provide the court with an evidentiary basis for its many assertions as to the rightness of its own position, the court must address paragraph 51 of the motion and footnote 5, which it

11

cites. Footnote 5 lists four scientific articles which defendant states support the proposition that "[e]ach of the ingredients identified in the Complaint as contained in LaCroix sparkling water are naturally occurring and derived from fruits and plants such as strawberries, pineapples, bananas, oranges, apples, limes, blueberries, sage, lavender, and ginger." Mot. Sanctions 20–21. The court has attempted to locate these articles and has found all but one, the "Summary Data for Chemical Selection: Linalool." *Id.* at 21. The bottom line is that this motion cannot be decided on the basis of four articles defendant has chosen to cite, nor does the fact, assuming it is undisputed, that all four of the subject ingredients occur naturally in fruits, oils or spices or (as one article is quoted as saying) "have been identified as constituents of the flavors of many fruits and as natural components of many essential oils used in flavorings" resolve the issue of whether, in industrial uses such as flavor-creators in food products, they are properly viewed as natural or synthetic. *Id.* at 21 n.5.

### B. <u>Pre-Suit Testing</u>

The next argument defendant asserts is that plaintiff and her counsel filed this lawsuit based upon the testing of only a single flavor of defendant's water. *See* ECF No. 33-2, Ex. B at 1. The court is hard-pressed to know what to make of this argument, particularly given that neither party makes any legal argument concerning it. Defendant does not indicate whether the substances listed in ¶ 18 of the complaint are found in other LaCroix Water flavors, and perhaps it need not do so. Does the complaint violate Rule 11 if only one of defendant's flavors advertised as all natural contains synthetic ingredients? Perhaps such an argument could be made, but at this preliminary stage in the litigation and lacking legal argument, the court has not been presented with any argument as to what it should do with a complaint that is well-grounded but only in part. Perhaps if it turns out that only one flavor of defendant's water contains

synthetic ingredients, sanctions for the broad allegations of the complaint might be in order,[6] but it seems unlikely that, assuming plaintiff is right as to one flavor, her allegations as to other flavors are baseless. Whether the four identified substances are natural or synthetic appears to be a central issue in this suit. However that issue is resolved, it is unlikely that the substances used to achieve the fruit taste in other flavors are significantly different.

Defendant also argues that "the form and type of testing performed by Plaintiff and her counsel on a single flavor would not even detect if LaCroix sparkling water contains 'synthetic' ingredients." Mot. Sanctions 4. Defendant asserts that "[i]t is impossible to 'reverse engineer' an already-carbonated beverage to divine its original, pre-carbonation ingredients." *Id.* at 4–5. If defendant is right, then its call for more pre-suit testing would not yield any useful information, and discovery would be required.

In any event, neither in defendant's statement of its argument nor in the more extended corresponding "Argument" section of its motion does defendant provide the court with any evidence to support its position. It asserts that its own "biobased and biogenetic carbon testing laboratory accredited under the strict standards set by the International Standards Organization, *see* ECF No. 33-3. Ex. C, has conclusively confirmed that LaCroix sparkling water is all natural and contains no traces of synthetic or artificial additives or ingredients." Mot. Sanctions 17-18. This laboratory found each ingredient in defendant's water to be "100% Biobased carbon" and "all natural" meaning "entirely sourced from plants . . . ." *Id.* at 18. No evidentiary foundation is provided to assist the court in deciding, as defendant wishes it to do, that plaintiff's laboratory findings should be disregarded. All defendant argues is that its own laboratory is better and determined that the ingredients were all derived from plants. Does defendant maintain that the

---

[6] If this turns out to be the case, defendant may seek leave to renew its motion for sanctions.

13

court can disregard plaintiff's laboratory's conclusion and the allegations of the complaint based on a largely unexplained laboratory report attached to the defendant's Rule 11 motion? The court knows of no way it could do so.

Defendant further argues that plaintiff's laboratory analysis was inadequate because it did not include either a gas chromatography or mass spectrometry analysis of the ingredients identified. But defendant fails to tell the court whether gas chromatography and mass spectrometry are essential to the identification of these four substances or whether they would answer the question of whether the substances are natural or synthetic. The court has no idea. Defendant has provided an exhibit, Ex. B to its motion, which indicates that plaintiff's laboratory conducted "gas chromatography/mass spectrometry (GC/MS)" and excluded the presence of various substances in defendant's water. ECF No. 33-2 at 1. Plaintiff has not alleged the contrary.

## C. Press Release

Defendant complains, perhaps justifiably, that plaintiff issued a press release that claimed that substances in defendant's beverage "appear in other non-consumable products," associated with insecticides, tumors, and cancer, causing significant damage to defendant and to its shareholders. Mot. Sanctions 3, 8. Defendant has not suggested that these claims are untrue, nor has it provided the court with any authority suggesting what action it can take at this point for press releases issued before removal. *See* Part II.

Plaintiff argues that it is common in cases attempting to demonstrate the synthetic nature of food additives to refer to their non-food uses. It appears that plaintiff's counsel, probably as defendant asserts to increase the settlement value of the case, has made true statements about non-consumable uses of the ingredients its laboratory identified in defendant's product. The

press release might provide some evidence of a motive to shock the public and thus enhance the settlement value of the case, but without any indication that the statements were not true or that the complaint is without a reasonable basis, it is hard to know what to do if a plaintiff's lawyer makes true statements to maximize the value of his case. If there is a basis for doing anything, defendant has left it entirely to the court to try to figure out what it is. This is not the court's job. *United States v. McLee,* 436 F.3d 751, 760 (7th Cir. 2006); *Heft v. Moore*, 351 F.3d 278, 284 (7th Cir. 2003).

### IV. Conclusion

Because defendant has failed to substantiate the key legal and factual claims made in its Rule 11 motion, the motion is denied.

Dated: July 11, 2019                             /s/
                                                  Joan B. Gottschall
                                                  United States District Judge